UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTH CARE SERVICE CORPORATION,<br><br>Defendant. | )<br>)<br>)   18 C 6306<br>)<br>)   Judge Gary Feinerman<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

The background of this coverage suit is set forth in the court's prior opinion, 330 F.R.D. 180 (N.D. Ill. 2019), familiarity with which is assumed. Now before the court is a motion by Health Care Service Corporation ("HCSC") for a protective order as to a Rule 30(b)(6) deposition notice served in December 2020 by Homeland Insurance Company of New York. Doc. 127; Doc. 136-4 ("Second Further Modified 30(b)(6) Notice"). HCSC challenges only one topic in the notice—Topic 8, which encompasses "[t]he negotiation, application, purchase, PLACEMENT, UNDERWRITING, and renewal of the 2012-2013 Managed Care Errors and Omissions Liability Insurance Policies ("E&O Policies") issued by Homeland, AWAC and/or Travelers to HCSC." Doc. 128 at 3; Doc. 134 at 4.

Rule 30(b)(6) provides that a party may name an organization as a deponent, but "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). Upon receiving a Rule 30(b)(6) notice, "[t]he named organization must designate one or more officers … to testify on its behalf … about information known or reasonably available to the organization." *Ibid*. A Rule 30(b)(6) deposition is cabined by the scope of discovery permitted under Rule 26(b)(1), which provides in pertinent part that "[p]arties may obtain discovery

1

regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A court may issue a protective order "to protect a party … from annoyance, embarrassment, oppression, or undue burden or expense" if "good cause" exists. Fed. R. Civ. P. 26(c)(1).

HCSC submits that good cause exists to relieve it of any obligation to produce a witness to testify on Topic 8, arguing that the topic is objectionable on three grounds—relevance, proportionality, and reasonable particularity. Doc. 128 at 3, 11-13; Doc. 137 at 2-13.

*Relevance*. HCSC contends that Topic 8 is not relevant because "[t]here is no dispute between the parties regarding the negotiation, application, purchase, placement, underwriting or renewal of the 2012-2012 E&O Policies, or over what the actual terms of any of the policies say." Doc. 128 at 11. HCSC adds that Homeland in any event already has that information because "it is the insurer, not the insured, which underwrites the policy." *Id*. at 5, 11-12. According to HCSC, Topic 8's irrelevance is confirmed by the fact that Homeland "agreed to drop" the topic in a letter dated December 6, 2019. *Id*. at 4; Doc. 137 at 8.

Topic 8 is relevant. Homeland's position in this suit is that the E&O Policies do not cover certain antitrust suits brought against HCSC due to the operation of three policy provisions—the Related Claim provision, the Prior Pending Litigation Exclusion, and the Cooperation Clause. Doc. 59 at ¶¶ 68-71. What the parties understood those provisions to mean before entering into the policies may ultimately bear on how the provisions are interpreted. *See Ne. Commc'ns of Wis., Inc. v. CenturyTel, Inc.*, 516 F.3d 608, 611 (7th Cir. 2008) ("Ambiguity in a contract permits resort to parol evidence—whether usages of trade or exchanges between the contracting parties."); *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 878 (7th Cir. 2005) ("[Under Illinois law,] even when a contract is integrated on its face, if the contract is ambiguous, as a

matter of law, then extrinsic and parol evidence is admissible to explain the terms of the ambiguous contract.") (internal quotation marks omitted). Indeed, HCSC itself deposed Homeland's "underwriting" witness for a full day to inquire into Homeland's then-understanding of those provisions, Doc. 136-5 at 6 (141:1-3), 12 (147:8-9); whether she communicated with anyone regarding the Cooperation Clause when underwriting the policy, *id*. at 24-25 (159:15-160:3); and whether she had learned of other claims potentially related to the underlying antitrust litigation during the underwriting of the policy, *id*. at 4 (139:20-24).

Topic 8's relevance perhaps would be undermined if Homeland in fact had "agreed to drop" it over a year ago. But the parties never reached any such agreement. In its December 6, 2019 letter, Homeland stated that it was "willing to narrow [the prior version of Topic 8] to the sole issue of reporting of Claims" under the E&O Policies in exchange for concessions on HCSC's part. Doc. 130-4 at 7. HCSC rejected Homeland's proposal, Doc. 130-10 at 8, so it cannot now suggest that Homeland has gone back on its word by including Topic 8 in the Rule 30(b)(6) deposition notice.

*Proportionality*. HCSC next argues that Topic 8 is not "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), because it is unduly burdensome and duplicative of other discovery that Homeland already has taken, Doc. 128 at 12-13; Doc. 137 at 3, 9-11. In so arguing, HCSC focuses on two categories of discovery that Homeland has taken: (1) receiving the placement file from HCSC's insurance broker; and (2) deposing that broker and various HCSC employees. Doc. 128 at 12-13. A Rule 30(b)(6) deposition on Topic 8 would not duplicate that discovery. As to the broker's placement file, Homeland correctly notes that document production is no substitute for the testimony of a Rule 30(b)(6) deponent, who can clarify and expand upon the produced documents. *See Great Am. Ins. Co. of N.Y. v. Vegas*

*Const. Co.*, 251 F.R.D. 534, 541 (D. Nev. 2008) ("Producing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent."); *Lessert v. BNSF Ry. Co.*, 2019 WL 3431282, at *4 (D.S.D. July 30, 2019) (same). And as to the depositions already taken, fact depositions of individual witnesses often cannot substitute for the testimony of a Rule 30(b)(6) deponent whose representations bind the corporation. *See Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, 2020 WL 424918, at *13 (N.D. Ill. Jan. 27, 2020) ("[Fact witness] testimony is not the testimony of the corporation but of the individual. … [Plaintiff] is entitled to obtain [Defendant's] *corporate testimony* about relevant topics, even if it has already obtained similar or related testimony from an individual.") (internal quotation marks and citations omitted).

HCSC's argument as to undue burden is equally unavailing. HCSC submits that it "would be unduly burdensome … for [it] to be required to prepare a corporate designee to testify about such a broad topic[.]" Doc. 128 at 12-13. True enough, reviewing the pertinent documents and preparing a designee will require additional effort. But the governing standard is "*undue* burden or expense," and HCSC does not show that the task would be especially onerous or expensive. Fed. R. Civ. P. 26(c)(1) (emphasis added). Taking account of other pertinent factors under Rule 26(b)(1)—including "the parties' relative access to relevant information" (only HCSC knows how it understood the pertinent policy provisions) and "the amount in controversy" ($20 million)—including Topic 8 in the Rule 30(b)(6) deposition is plainly proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1).

*Reasonable Particularity*. Finally, HCSC argues that Topic 8 does not "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). According to

4

HCSC, Topic 8 seeks "unbounded" testimony "untied to any of the issues or policy provisions involved in this coverage dispute." Doc. 128 at 12-13. That argument fails to persuade.

Granted, Topic 8 could have been drafted more elegantly. Homeland represents that Topic 8 is addressed essentially to one topic—the "underwriting" process—with several sub-topics—negotiation, application, purchase, placement, and renewal. Doc. 131; Doc. 134 at 4. Some confusion arises because "underwriting" is a defined term in the E&O Policies, as is "placement." Doc. 130-18 at 31, ¶ 20 ("'PLACEMENT' means the process of negotiating the terms of any E&O POLICY, including all endorsements and the selling of the E&O POLICY."), ¶ 23 ("'UNDERWRITING' means the process of evaluating the risk and exposure of HCSC, evaluating and determining the amount of insurance coverage to be provided to HCSC, the negotiating or determination of particular language to be incorporated into a policy, and negotiating and determining the premium to be paid for the insurance coverage to HCSC."). Still, it is clear enough what testimony fairly comes under Topic 8: HCSC's view of the facts and circumstances of the underwriting process, including its then-understanding (if any) of the pertinent policy provisions. That is specific enough for purposes of Rule 30(b)(6).

For the foregoing reasons, HCSC's motion for a protective order is denied.

February 16, 2021

                                               United States District Judge