# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, | |
| Plaintiff, | CIVIL ACTION NO. 18-cv-6306 |
| vs. | |
| HEALTH CARE SERVICE CORPORATION, *D/B/A* BLUE CROSS BLUE SHIELD OF ILLINOIS, BLUE CROSS BLUE SHIELD OF NEW MEXICO, BLUE CROSS BLUE SHIELD OF OKLAHOMA, AND BLUE CROSS BLUE SHIELD OF TEXAS, | **JURY DEMAND** <br><br> Hon. Gary Feinerman |
| Defendant. | |

## PLAINTIFF HOMELAND INSURANCE COMPANY OF NEW YORK'S ANSWER TO DEFENDANT HEALTH CARE SERVICE CORPORATION'S COUNTERCLAIM

SMRH:4891-2528-4412.1

Plaintiff Homeland Insurance Company of New York ("Homeland") answers Defendant Health Care Services Corporation's ("HCSC") Counterclaim [Dkt. 307] as follows:

## PARTIES

**1.** HCSC is an Illinois mutual legal reserve company with its principal place of business in Illinois.

**ANSWER:** Upon information and belief, Homeland admits that HCSC is a company organized and existing under the laws of the State of Illinois with its principle place of business in the State of Illinois. Homeland lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations and, as such, those allegations are denied.

**2.** Upon information and belief, Homeland is a corporation organized under the laws of New York with its principal place of business in Plymouth, Minnesota.

**ANSWER:** Homeland admits that it is a corporation organized under the laws of the State of New York and that its principal place of business is in Minnesota. Homeland denies the allegations in Paragraph 2 to the extent that they differ from what is specifically admitted herein.

## JURISDICTION AND VENUE

**3.** This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:** Homeland admits that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Homeland and HCSC and the amount in controversy exceeds $75,000, exclusive of interest and costs. Homeland denies the allegations in Paragraph 3 to the extent that they differ from what is specifically admitted herein.

**4.** Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(a).

**ANSWER:** Homeland admits that venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391. Homeland denies the allegations in Paragraph 4 to the extent that they differ from what is specifically admitted herein.

5.     These counterclaims are commenced pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

**ANSWER:**  Homeland admits that the Counterclaim alleges that it was commenced pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*  Homeland denies that HCSC is entitled to declaratory relief or any other relief pled in its Counterclaim.  Homeland denies the allegations in Paragraph 5 to the extent that they differ from what is specifically admitted herein.

6.     There is an actual and justiciable controversy between HCSC and Homeland with regards to the coverage provided under the terms of Managed Care E&O Excess Policy No. MCX- 1756-12, sold by Homeland to HCSC for the policy period of January 1, 2012 to January 1, 2013 ("Homeland Policy"), a copy of which is attached as Exhibit H to Homeland's Second Amended Complaint (Doc. 304-8).

**ANSWER:**  Homeland admits that there is an actual and justiciable controversy between HCSC and Homeland with regards to coverage under the terms of Managed Care E&O Excess Policy No. MCX- 1756-12, issued by Homeland to HCSC for the policy period of January 1, 2012 to January 1, 2013 (the "Homeland Policy").  Homeland admits that the Homeland Policy is attached to Homeland's Second Amended Complaint [Dkt. 304] as **Exhibit H** [Dkt. 304-8]. Homeland denies that HCSC is entitled to any declaratory or other relief pled in its Counterclaim.  Homeland denies the allegations in Paragraph 6 to the extent that they differ from what is specifically admitted herein.

### THE ALLIED WORLD POLICY

7.     Allied World Surplus Lines Insurance Company, formerly known as Darwin Select Insurance Company ("AWAC"), sold HCSC a Managed Care Errors and Omissions Liability Insurance Policy, No. 0303-3250, for the policy period of January 1, 2012 to January 1, 2013 ("AWAC Policy"). A copy of the AWAC Policy is attached hereto as **Exhibit A**.

**ANSWER:**  Homeland admits that a copy of the primary Managed Care Errors and Omissions Liability Insurance Policy, No. 0303-3250, for the policy period of January 1, 2012 to

-3-

January 1, 2013 (the "AWAC Policy") is attached to HCSC's Counterclaim as **Exhibit A**. Homeland denies the allegations in Paragraph 7 to the extent that they differ from what is specifically admitted herein.

    **8.**    The Insuring Agreement in the AWAC Policy provides:

> The **Underwriter** will pay on behalf of any **Insured Loss** which the **Insured** is legally obligated to pay as a result of a **Claim** that is first made against the **Insured** during the **Policy Period** or during any applicable Extended Reporting Period.

*See* AWAC Policy at § I, HCSC Ex. A.[1]

    **ANSWER:**  Homeland admits that Paragraph 8 purports to quote portions of the AWAC Policy and responds that the policy speaks for itself and is the best evidence of its respective terms, conditions and provisions. Homeland objects to the allegations to the extent that they do not fully and accurately describe the AWAC Policy. Homeland denies the allegations in Paragraph 8 to the extent that they differ from what is specifically admitted herein.

    **9.**    The AWAC Policy defines "Loss," in part, as:

> **Defense Expenses**, pre- and post-judgment interest, and any monetary amount which an **Insured** is legally obligated to pay as a result of a **Claim**. **Loss** shall not include:

> (1)    fines, penalties, taxes, and punitive, exemplary or multiplied damages; provided that, loss shall include fines, penalties or punitive or exemplary or multiplied damages awarded in **Claims** for **Antitrust Activity** up to the amount listed in ITEM 3 (b) of the Declarations (which amount is part of, and not in addition to the amount listed in ITEM 3 (a) of the Declarations), but only if such fines, penalties or punitive or exemplary or multiplied damages are insurable under applicable law.

> (2)    fees, amounts, benefits or coverage owed under any contract with any party including providers of health care services, health care plan or trust, insurance or workers' compensation policy or plan or program of self-insurance;

> (3)    non-monetary relief or redress in any form, or equitable relief including without limitation the restitution or disgorgement of funds or the cost of

---

[1]    Terms used herein in initial capitals are defined as in the AWAC or Homeland Policies, or if not in those policies, as defined herein.

complying with any injunctive, declaratory or administrative relief; with regard to government claims involving fraud and abuse type activities such as or in connection with Medicare/Medicaid, only **Defense Expenses** will be covered; or

(4)     matters which are uninsurable under applicable law.

Determination of the insurability of any **Loss** shall be made under the laws most favorable to the insurability of **Loss** of either: (a) of the jurisdiction of the **Named Insured's** principal place of business, or (b) the jurisdiction where the Wrongful Act giving rise to such **Loss** occurred.

*See* AWAC Policy at § IV(J), as amended by Endorsement Nos. 13 and 15, HCSC Ex. A.

**ANSWER:** Homeland admits that Paragraph 9 purports to quote portions of the AWAC Policy and responds that the policy speaks for itself and is the best evidence of its respective terms, conditions and provisions.  Homeland objects to the allegations to the extent that they do not fully and accurately describe the AWAC Policy.  Homeland denies the allegations in Paragraph 9 to the extent that they differ from what is specifically admitted herein.

## THE HOMELAND POLICY

**10.**     The Homeland Policy is an excess insurance policy that has a limit of liability of $20 million. See Homeland Policy at ITEM 3, Declarations, Doc. 304-8 at PageID #13164.

**ANSWER:**  Homeland admits that the Homeland Policy is an excess insurance policy that provides coverage, with a limit of liability of $20 million, pursuant to its policy terms, conditions, and exclusions specified therein and as a follow-form excess policy to the AWAC Policy.  Homeland states that the policy speaks for itself and is the best evidence of its respective terms, conditions and provisions.  Homeland further objects to the extent the allegations call for a legal conclusion and/or the application of law to fact.  Homeland denies the allegations in Paragraph 10 to the extent that they differ from what is specifically admitted herein.

**11.**     Insuring Agreement D in the Homeland Policy provides:

This Policy will apply in conformance with, and will follow the form of, the terms, conditions, agreements, exclusions, definitions and endorsements of the **Underlying Insurance**, except:

(1)     the Underwriter will have no obligation under this Policy with

respect to any **Claim** that is settled without the Underwriter's written consent;

(2)    with respect to any provisions to the contrary contained in this Policy;

(3)    the applicable limit of liability of the **Underlying Insurance** shall be deemed to be reduced or exhausted solely as a result of payments for loss or damages (including costs, charges and expenses) that are covered under this Policy; and

(4)    the coverage provided by this Policy shall not be broader than any **Underlying Insurance** unless expressly provided herein, including any endorsement hereto.

*See* Homeland Policy at § I(D), Doc. 304-8 at PageID #13172-73.

**ANSWER:** Homeland admits that Paragraph 11 purports to quote portions of the Homeland Policy and responds that the policy speaks for itself and is the best evidence of its respective terms, conditions and provisions. Homeland objects to the allegations to the extent that they do not fully and accurately describe the Homeland Policy. Homeland denies the allegations in Paragraph 11 to the extent that they differ from what is specifically admitted herein.

12.    The Homeland Policy defines "Underlying Insurance" as "all insurance policies or risk transfer instruments (including, but not limited to, self-insured retentions or other alternative arrangements) scheduled in ITEM 4 of the Declarations and any policies or risk transfer arrangements renewing or replacing them." *See* Homeland Policy at § II(G), Doc. 304-8 at PageID #13173.

**ANSWER:** Homeland admits that Paragraph 12 purports to quote portions of the Homeland Policy and responds that the policy speaks for itself and is the best evidence of its respective terms, conditions and provisions. Homeland objects to the allegations to the extent that they do not fully and accurately describe the Homeland Policy. Homeland denies the allegations in Paragraph 12 to the extent that they differ from what is specifically admitted herein.

SMRH:4891-2528-4412.1

13.     ITEM 4 of the Declaration in the Homeland Policy refers the reader to "Endorsement 1." *See* Homeland Policy at ITEM 4, Declarations, Doc. 304-8 at PageID #13164.

**ANSWER:**   Homeland admits that Paragraph 13 purports to state portions of the Declarations in the Homeland Policy and responds that the policy speaks for itself and is the best evidence of its respective terms, conditions and provisions.  Homeland objects to the allegations to the extent that they do not fully and accurately describe the Homeland Policy.  Homeland further objects to the extent the allegations call for a legal conclusion and/or the application of law to fact.  Homeland denies the allegations in Paragraph 13 to the extent that they differ from what is specifically admitted herein.

14.     Endorsement No. 1 to the Homeland Policy provides that "Underlying Insurance" shall mean the AWAC Policy and Managed Care Organization E&O Policy No. 103996357, issued to HCSC by Travelers Excess and Surplus Lines Company. *See* Homeland Policy at Endorsement No. 1, Doc. 304-8 at PageID #13166.

**ANSWER:**   Homeland admits that Paragraph 14 purports to state the definition of "Underlying Insurance" in the Homeland Policy and responds that the policy speaks for itself and is the best evidence of its respective terms, conditions and provisions.  Homeland objects to the allegations to the extent that they do not fully and accurately describe the Homeland Policy.  Homeland further objects to the extent the allegations call for a legal conclusion and/or the application of law to fact.  Homeland denies the allegations in Paragraph 14 to the extent that they differ from what is specifically admitted herein.

### THE UNDERLYING CLAIMS ("MDL ACTION")

15.     In 2012, numerous class actions were filed against various Blue Cross and Blue Shield entities or member plans ("Blue Plans") and the Blue Cross and Blue Shield Association ("Association") alleging violations of antitrust laws. HCSC was a defendant in certain of these putative class actions.

**ANSWER:** Homeland admits that in 2012, a number of class actions were filed against multiple Blue Cross and Blue Shield entities or member plans (the "Blue Plans") and the Blue

Cross and Blue Shield Association ("Association") alleging violations of antitrust laws and that HCSC was a defendant in certain of these putative class actions, but Homeland objects to the allegations to the extent that they do not fully and accurately describe the class actions. Homeland denies the allegations in Paragraph 15 to the extent that they differ from what is specifically admitted herein.

16.    In December 2012, the Judicial Panel on Multidistrict Litigation coordinated and transferred several of these actions to the United States District Court for the Northern District of Alabama, creating the MDL Action.

**ANSWER:**  Homeland admits that, in December 2012, the Judicial Panel on Multidistrict Litigation consolidated and transferred such actions to the United States District Court for the Northern District of Alabama, creating the MDL litigation referred to as *In re: Blue Cross Blue Shield Antitrust Litigation*, Master File No. 2:13-cv-20000-RDP (the "MDL Action"), but Homeland objects to the allegations to the extent that they do not fully and accurately describe the MDL Action.  Homeland denies the allegations in Paragraph 16 to the extent that they differ from what is specifically admitted herein.

17.    In July 2013, various providers ("Providers") filed a consolidated amended complaint against the Blue Plans, including HCSC, and the Association ("Provider Amended Complaint").

**ANSWER:**  Homeland admits that, in July 2013, pursuant to an Order issued by the MDL Court, two consolidated complaints were filed in the MDL Action, one for the "Subscriber Track" and the other for the "Provider Track," against the Blue Plans, including HCSC, and the Association, but Homeland objects to the allegations to the extent that they do not fully and accurately describe the Provider Track, Provider Amended Complaint, subsequent Provider Amended Complaints, or the MDL Action.  Homeland denies the allegations in Paragraph 17 to the extent that they differ from what is specifically admitted herein.

18.     Also in July 2013, subscribers to the various Blue Plans ("Subscribers") filed a consolidated amended complaint against the Blue Plans, including HCSC, and the Association ("Subscriber Amended Complaint").

**ANSWER:**  Homeland admits that, in July 2013, pursuant to an Order issued by the MDL Court, two consolidated complaints were filed in the MDL Action, one for the "Subscriber Track" and the other for the "Provider Track," against the Blue Plans, including HCSC, and the Association, but Homeland objects to the allegations to the extent that they do not fully and accurately describe the Subscriber Track, Subscriber Amended Complaint, subsequent Subscriber Amended Complaints, or the MDL Action.  Homeland denies the allegations in Paragraph 18 to the extent that they differ from what is specifically admitted herein.

19.     The Subscribers and Providers have amended their respective consolidated complaints numerous times, including by filing the amended complaints attached to the Homeland's Second Amended Complaint in this action, as Exhibit B ("Subscriber Third Amended Complaint," Doc. 304-2) and Exhibit C ("Subscriber Fourth Amended Complaint," Doc. 304-3). In addition, on April 18, 2017, the Providers filed a fourth amended consolidated complaint ("Provider Fourth Amended Complaint"). *See* Doc. 1083, Case No. 2:13-cv-20000-RDP (N.D. Ala.).

**ANSWER:**  Homeland admits that the Subscribers and Providers amended their respective consolidated complaints, including by filing the amended complaints attached to Homeland's Second Amended Complaint as Exhibit B ("Subscriber Third Amended Complaint," Doc. 304-2) and Exhibit C ("Subscriber Fourth Amended Complaint," Doc. 304-3) and, on April 18, 2017, the Providers filed a fourth amended consolidated complaint ("Provider Fourth Amended Complaint," Dkt. 1083), but Homeland objects to the allegations to the extent that they do not fully and accurately describe the MDL Action, the Provider and Subscriber Tracks, the Provider and Subscriber Amended Complaints, or subsequent Provider and Subscriber Amended Complaints.  Homeland denies the allegations in Paragraph 19 to the extent that they differ from what is specifically admitted herein.

20.     In their various complaints, the Subscribers and Providers allege, among other things, that the Blue Plans have conspired to allocate markets in violation of antitrust laws. Both the Subscribers and Providers allege that the Association and the Blue Plans carried out their alleged conspiracy to violate antitrust laws through certain provisions contained in the license agreements between the Association and each of the Blue Plans, as alleged in further detail in those complaints.

**ANSWER:**  Homeland admits that the Subscribers and Providers made such allegations, among many others, in the MDL Action.  Homeland objects to the allegations to the extent that they do not fully and accurately describe the MDL Action.  Homeland denies the allegations in Paragraph 20 to the extent that they differ from what is specifically admitted herein.

21.     The Subscribers alleged that the Blue Plans, including HCSC, and the Association were jointly and severally liable for billions of dollars in alleged damages. The Providers also allege that the Blue Plans, including HCSC, and the Association are jointly and severally liable for billions of dollars in alleged damages. In their respective actions, the Subscribers and Providers seek damages, multiplied or treble damages, plaintiffs' attorneys' fees, interest and other monetary relief.

**ANSWER:**  Homeland admits that the Subscribers and Providers made such allegations, among many others, including allegations for injunctive and non-monetary relief, in the MDL Action.  Homeland objects to the allegations to the extent that they do not fully and accurately describe the MDL Action.  Homeland denies the allegations in Paragraph 21 to the extent that they differ from what is specifically admitted herein.

22.     On October 16, 2020, the Subscriber Plaintiffs, Blue Plans, and Association executed a settlement agreement ("Subscriber Settlement" or "Subscriber Settlement Agreement") that resolved the claims asserted in the Subscriber Fourth Amended Complaint. A true and correct copy of the Subscriber Settlement Agreement, as attached to the Subscriber Plaintiffs' Motion for Preliminary Approval, is attached hereto as **Exhibit B**.

**ANSWER:** Homeland admits that On October 16, 2020, the Subscriber Plaintiffs in the MDL Action entered into a settlement with the Blue Entities, including HCSC, and the Association to resolve the claims in the Subscriber Track. Homeland admits that the October 16, 2020 agreement is attached to HCSC's Counterclaim as **Exhibit B**. Homeland objects to the allegations to the extent that they do not fully and accurately describe the Subscriber Settlement. Homeland denies the allegations in Paragraph 22 to the extent that they differ from what is specifically admitted herein.

23. The Subscriber Fourth Amended Complaint did not contain any claims for unjust enrichment or any requests for awards of restitution.

**ANSWER:** Homeland admits that the Subscriber Fourth Amended Complaint did not expressly label any claims for relief as unjust enrichment or label any requests for awards as restitution, as earlier Subscriber complaints did, but the Subscriber Fourth Amended Complaint did allege that the Blue Entities received supra-competitive premiums, which effectively constitutes claims for unjust enrichment and an award of restitution.

24. The Subscriber Settlement Agreement provides for a monetary settlement payment of $2.67 billion ("the monetary settlement payment") to the Subscriber Plaintiffs in accordance with the terms of the Subscriber Settlement Agreement in connection with preliminary approval and final approval of the Subscriber Settlement.

**ANSWER:** Homeland admits that the Subscriber Settlement provides for, among other injunctive and non-monetary relief, a $2.67 billion payment to the Subscriber Plaintiffs. Homeland objects to the allegations to the extent that they do not fully and accurately describe the Subscriber Settlement. Homeland denies the allegations in Paragraph 24 to the extent that they differ from what is specifically admitted herein.

25. On August 9, 2022, the district court in the MDL Action issued an order granting final approval of the Subscriber Settlement. *See* Doc. 304-4, Homeland Ex. D.

**ANSWER:** Homeland admits that, on August 9, 2022, the district court in the MDL Action issued an order granting final approval of the Subscriber Settlement. Homeland denies

the allegations in Paragraph 25 to the extent that they differ from what is specifically admitted herein.

26.     Several Subscribers subsequently appealed the district court's final approval order to the Eleventh Circuit Court of Appeals. The appeal of the final approval order remains pending.

**ANSWER:**  Homeland admits that certain subscribers appealed the final approval order to the Eleventh Circuit Court of Appeals and that the appeal of the final approval order remains pending.  Homeland denies the allegations in Paragraph 26 to the extent that they differ from what is specifically admitted herein.

27.     Several Subscribers, who opted out of the Subscriber Settlement have filed their own actions against the Blue Plans, including HCSC, and Association, which remain pending.

**ANSWER:**  Homeland admits that certain subscribers who opted out of the Subscriber Settlement have filed their own actions against the Blue Plans, including HCSC, and the Association, which remain pending.  Homeland denies the allegations in Paragraph 27 to the extent that they differ from what is specifically admitted herein.

28.     The Provider Action remains pending and ongoing.

**ANSWER:**  Homeland admits that the Provider Track, for which this Court has previously determined Homeland owes no coverage obligation under the terms of the Homeland Policy, remains pending and ongoing.  Homeland denies the allegations in Paragraph 28 to the extent that they differ from what is specifically admitted herein.

29.     HCSC has not demanded payment or reimbursement of any Defense Expenses or of any payment pursuant to the Subscriber Settlement under the Homeland Policy.

**ANSWER:**  Homeland admits that HCSC has not provided Homeland with a demand to pay a specific amount of defense expenses for the MDL Action or to fund the Subscriber Settlement in the MDL Action, but is informed on information and belief that HCSC has paid its proportionate share of the Subscriber Settlement, thereby making the issues raised by

Homeland's Second Amended Complaint ripe for decision. Homeland denies the allegations in Paragraph 29 to the extent that they differ from what is specifically admitted herein.

30. HCSC has not sought coverage for payment of Defense Expenses, nor sought coverage for any payment pursuant to the Subscriber Settlement, under the Homeland Policy. Further, HCSC does not do so by this counter-claim.

**ANSWER:** Homeland admits that HCSC has not provided Homeland with a demand to pay a specific amount of defense expenses for the MDL Action or to fund the Subscriber Settlement in the MDL Action but is informed on information and belief that HCSC has paid its proportionate share of the Subscriber Settlement, thereby making the issues raised by Homeland's Second Amended Complaint ripe for decision. Homeland denies that HCSC has not sought coverage for the MDL Action under the Homeland Policy. Homeland denies the allegations in Paragraph 30 to the extent that they differ from what is specifically admitted herein.

## <u>COUNT ONE</u>

### For a Declaration that the Monetary Payment under the Subscriber Settlement Agreement Does Not Constitute Non-Monetary or Equitable Relief of Restitution or Disgorgement

31. HCSC repeats and incorporates the allegations set forth in paragraphs 1 through 30 of the Counterclaim above as if fully set forth herein.

**ANSWER:** Homeland repeats and incorporates its answers to the allegations set forth in paragraphs 1 through 30 of the Counterclaim above as if fully set forth herein.

32. The AWAC Policy, to which the Homeland Policy follows form, excludes from the definition of Loss:

> (3) non-monetary relief or redress in any form, or equitable relief including without limitation the restitution or disgorgement of funds or the cost of complying with any injunctive, declaratory or administrative relief; with regard to government claims involving fraud and abuse type activities such as or in connection with Medicare/Medicaid, only Defense Expenses will be covered "the restitution or disgorgement of funds" from the definition of "Loss."

See AWAC Policy at § IV(J)(3), as amended by Endorsement Nos. 13 and 15, HCSC Ex. A.

**ANSWER:** Homeland admits that Paragraph 32 purports to quote portions of the AWAC Policy and responds that the policy speaks for itself and is the best evidence of its respective terms, conditions and provisions. Homeland objects to the allegations to the extent that they do not fully and accurately describe the AWAC Policy. Homeland denies the allegations in Paragraph 32 to the extent that they differ from what is specifically admitted herein.

33. The monetary settlement payment under the Subscriber Settlement does not constitute non-monetary relief or equitable relief.

**ANSWER:** Homeland denies the allegations in Paragraph 33. Homeland further objects to the allegations to the extent they call for a legal conclusion and/or the application of law to fact.

34. The monetary settlement payment under the Subscriber Settlement does not constitute non-monetary relief or equitable relief or the restitution or the disgorgement of funds.

**ANSWER:** Homeland denies the allegations in Paragraph 34. Homeland further objects to the allegations to the extent they call for a legal conclusion and/or the application of law to fact.

35. An actual controversy exists between HCSC and Homeland with respect to whether the monetary settlement payment under the Subscriber Settlement Agreement is not covered Loss under the Homeland Policy based on § IV(J)(3) set forth above, which excludes from the definition of Loss non-monetary relief or equitable relief of the restitution or the disgorgement of funds.

**ANSWER:** Homeland admits that an actual controversy exists between HCSC and Homeland, in part, with respect to whether the Subscriber Settlement constitutes covered Loss under the Homeland Policy or the AWAC Policy to which it follows form, which excludes from the definition of Loss non-monetary relief or redress in any form, or equitable relief including without limitation the restitution or disgorgement of funds or the cost of complying with any injunctive, declaratory or administrative relief. Homeland denies that the Subscriber Settlement

constitutes covered Loss under the Homeland Policy or the AWAC Policy to which it follows form. Homeland denies the allegations in Paragraph 35 to the extent that they differ from what is specifically admitted herein.

36.     HCSC is entitled to a declaration that the monetary settlement payment under the Subscriber Settlement Agreement is not non-monetary relief or equitable relief of the restitution or the disgorgement of funds excluded from the definition of "Loss" by § IV(J)(3) set forth above.

**ANSWER:** Homeland denies that HCSC is entitled to such a declaration or any other relief sought in its Counterclaim. Homeland further objects to the allegations to the extent they call for a legal conclusion and/or the application of law to fact. Homeland denies the allegations in Paragraph 36 to the extent that they differ from what is specifically admitted herein.

## COUNT TWO

**For a Declaration that the Monetary Payment under the Subscriber Settlement Agreement Does Not Constitute Non-Monetary or Equitable Relief of Restitution or Disgorgement**

37.     HCSC repeats and incorporates the allegations set forth in paragraphs 1 through 30 [sic] of the Counterclaim above as if fully set forth herein.

**ANSWER:** Homeland hereby repeats and incorporates its answers to the allegations set forth in paragraphs 1 through 36 of the Counterclaim above as if fully set forth herein.

38.     The AWAC Policy, to which the Homeland Policy follows form, excludes "matters uninsurable under applicable law" from the definition of "Loss." *See* AWAC Policy at § IV(J)(4), as amended by Endorsement Nos. 13 and 15, HCSC Ex. A.

**ANSWER:** Homeland admits that Paragraph 38 purports to quote portions of the AWAC Policy and responds that the policy speaks for itself and is the best evidence of its respective terms, conditions and provisions. Homeland objects to the allegations to the extent that they do not fully and accurately describe the AWAC Policy. Homeland denies the allegations in Paragraph 38 to the extent that they differ from what is specifically admitted herein.

39.     The monetary settlement payment under the Subscriber Settlement is not uninsurable as a matter of law.

**ANSWER:** Homeland denies the allegations in Paragraph 39.  Homeland further objects to the allegations to the extent they call for a legal conclusion and/or the application of law to fact.

40.     An actual controversy exists between HCSC and Homeland with respect to whether the monetary settlement payment under the Subscriber Settlement Agreement is "uninsurable under the applicable law," and therefore, is not covered Loss under the Homeland Policy.

**ANSWER:**  Homeland admits that an actual controversy exists between HCSC and Homeland with respect to whether the monetary settlement payment under the Subscriber Settlement Agreement is "uninsurable under the applicable law," and therefore, is not covered Loss under the Homeland Policy.  Homeland denies the allegations in Paragraph 40 to the extent that they differ from what is specifically admitted herein.

41.     HCSC is entitled to a declaration that the monetary settlement payment amount under the Subscriber Settlement Agreement is not "uninsurable under the applicable law," and therefore, is not excluded from the definition of "Loss" on this basis.

**ANSWER:**  Homeland denies that HCSC is entitled to such declaration or any other relief sought in its Counterclaim.  Homeland further objects to the allegations to the extent they call for a legal conclusion and/or the application of law to fact.  Homeland denies the allegations in Paragraph 41 to the extent that they differ from what is specifically admitted herein.

## COUNT THREE

**For a Declaration that the Monetary Payment under the Subscriber Settlement Agreement Does Not Constitute the Cost of Complying with Injunctive, Declaratory, or Administrative Relief**

42.     HCSC repeats and incorporates the allegations set forth in paragraphs 1 through 30 [sic] of the Counterclaim above as if fully set forth herein.

**ANSWER:** Homeland repeats and incorporates its answers to the allegations set forth in paragraphs 1 through 41 of the Counterclaim above as if fully set forth herein.

43. The AWAC Policy, to which the Homeland Policy follows form, excludes "the cost of complying with any injunctive, declaratory or administrative relief" from the definition of "Loss." *See* AWAC Policy at § IV(J)(3), as amended by Endorsement Nos. 13 and 15, HCSC Ex. A.

**ANSWER:** Homeland admits that Paragraph 43 purports to quote portions of the AWAC Policy and responds that the policy speaks for itself and is the best evidence of its respective terms, conditions and provisions. Homeland admits that the Homeland Policy follows form to the AWAC Policy unless specifically stated otherwise. Homeland objects to the allegations to the extent that they do not fully and accurately describe the AWAC Policy. Homeland denies the allegations in Paragraph 43 to the extent that they differ from what is specifically admitted herein.

44. The monetary settlement payment under the Subscriber Settlement does not represent the cost of complying with injunctive, declaratory, or administrative relief.

**ANSWER:** Homeland denies the allegations in Paragraph 44. Homeland further objects to the allegations to the extent they call for a legal conclusion and/or the application of law to fact.

45. An actual controversy exists between HCSC and Homeland with respect to whether the monetary settlement payment under the Subscriber Settlement Agreement constitutes "the cost of complying with any injunctive, declaratory or administrative relief," and therefore, is not covered Loss under the Homeland Policy.

**ANSWER:** Homeland admits that an actual controversy exists between HCSC and Homeland with respect to whether the monetary settlement payment under the Subscriber Settlement Agreement constitutes "the cost of complying with any injunctive, declaratory or administrative relief," and therefore, is not covered Loss under the Homeland Policy.

46.     HCSC is entitled to a declaration that the monetary settlement payment under the Subscriber Settlement Agreement does not constitute "the cost of complying with any injunctive, declaratory or administrative relief," and therefore, is not excluded from the definition of "Loss" on this basis.

**ANSWER:**  Homeland denies that HCSC is entitled to such relief or any other relief sought in its Counterclaim.  Homeland further objects to the allegations to the extent they call for a legal conclusion and/or the application of law to fact.  Homeland denies the allegations in Paragraph 46 to the extent that they differ from what is specifically admitted herein.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

HCSC's Counterclaim and each purported claim or relief therein fails to state any claim against Homeland upon which relief can be granted.

### SECOND DEFENSE

The coverage sought in HCSC's Counterclaim, or that may be determined to apply based upon events and discovery in this action or Homeland's investigation, is barred or limited by the terms, conditions, exclusions, limitation and/or other provisions of the Homeland Policy, which is attached to Homeland's Second Amended Complaint as Exhibit H and incorporated herein by reference, and the underlying policies.

### THIRD DEFENSE

There is no coverage under the policies for any amount of defense fees incurred and/or paid by the Association, as such amounts are not covered Defense Expenses.

### FOURTH DEFENSE

HCSC's Counterclaim and each purported claim for relief therein is barred to the extent it is inconsistent with and/or does not fall within Homeland Policy's Insuring Agreement.

## FIFTH DEFENSE

HCSC's Counterclaim and each purported claim for relief therein is barred, in whole or in part, by the terms, conditions, exclusions, limitations and/or other provisions of the Homeland Policy or the underlying policies.

## SIXTH DEFENSE

HCSC's Counterclaim against Homeland is barred to the extent HCSC has failed to satisfy all conditions precedent to coverage.

## SEVENTH DEFENSE

Homeland is not responsible for HCSC's attorneys' fees and costs.

## EIGHTH DEFENSE

HCSC's Counterclaim is barred by the statute of limitations, doctrines of estoppel, waiver, and laches.

## NINTH DEFENSE

Insurance coverage for HCSC is unavailable under the Homeland Policy to the extent that the full amount of the Underlying Insurance for the policy period has not been exhausted pursuant to the terms and conditions of the Homeland Policy and underlying policies.

## TENTH DEFENSE

While expressly denying any liability to HCSC, Homeland hereby asserts those affirmative defenses set forth in Rule 8 and Rule 12 of the Federal Rules of Civil Procedure as if fully stated herein, as the applicability of those defenses, if any, will be determined in discovery.

## ELEVENTH DEFENSE

Homeland reserves the right to allege other separate and additional defenses upon the discovery of additional facts during the course of discovery.

WHEREFORE, Homeland prays that the Court grant the following relief:

(1)    declare that Homeland has no liability to HCSC under the Homeland Policy for the MDL Action;

(2)    find that the Court should award Homeland its costs incurred in defense of HCSC's Counterclaim; and

(3)    find that the Court award Homeland such other and further relief, at law or in equity, that the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.


Respectfully submitted this 8th day of November, 2022.

Respectfully submitted,
By: /s/ Justine M. Casey
Justine M. Casey, admitted pro hac vice
R. Randal Crispen, admitted pro hac vice
John T. Brooks, admitted pro hac vice
Kevin M. Cloutier (6273805)
Mikela T. Sutrina (6311408)
Sheppard, Mullin, Richter & Hampton, LLP
70 West Madison Street, 48th floor
Chicago, Illinois 60602
Telephone: (312) 499-6300
Fax: (312) 499-6301
kcloutier@sheppardmullin.com
msutrina@sheppardmullin.com

*Counsel for Plaintiff Homeland Insurance Company of New York*

SMRH:4891-2528-4412.1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of this document was served upon counsel of record at the addresses indicated by CM/ECF electronic notification on this 8th day of November, 2022.

I declare under penalty of perjury that the foregoing is true and correct.


<u>/s/Justine M. Casey</u>
Justine M. Casey